Filed 3/8/22  P. v. Rosales CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEX JESSE ROSALES,<br><br>    Defendant and Appellant. | H048876<br>(Santa Clara County<br>Super. Ct. No. CC319535) |

In 2005, a jury convicted defendant Alex Jesse Rosales of felony murder and found true a felony-murder special circumstance allegation.  Rosales now appeals from the denial of his Penal Code section 1170.95[1] petition for failure to make a prima facie showing of entitlement to relief.  On appeal, Rosales's appointed counsel initially filed a brief that raised no issues pursuant to *People v. Wende* (1979) 25 Cal.3d 436, and Rosales filed a supplemental brief on his own behalf.  We requested supplemental briefing as to the issues Rosales raised, namely:  whether the trial court erred in concluding that the jury's felony-murder special circumstance finding precluded Rosales from making a prima facie showing of eligibility for relief and whether the trial court committed prejudicial error by failing to appoint counsel or obtain briefing before denying the petition.  We shall reverse and remand with directions.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

# I. BACKGROUND

## A. *Factual Summary*[2]

On the evening of July 9, 2003, Rosales and his friend Sergio Timothy Pineda went out to several bars in San Jose. Sometime after midnight, they drove in Pineda's silver Mazda to get some food. On the way, they encountered Jose Luis Ramirez. Rosales testified that Pineda said of Ramirez, "This guy is really drunk, I'm going to rob him." Pineda invited Ramirez to come to a party. Ramirez agreed and followed the Mazda in his truck. A couple streets away, the vehicles stopped. Pineda directed Ramirez to park in an alley.

Pineda then beat Ramirez with a baseball bat, hitting him multiple times in the head and the body. A man riding his bicycle nearby saw the beating and reported it to police. After Ramirez fell to the ground, Pineda went through his pockets. Pineda then returned to the Mazda and he and Rosales drove a short distance away, leaving Ramirez lying in the street. Pineda looked at the items he had stolen. According to Rosales, when Pineda realized he had not gotten any money from Ramirez, they drove back in the direction of Ramirez. Pineda got out of the car and got into Ramirez's truck. Rosales fled in the Mazda. When Rosales stepped on the gas, he hit Ramirez and dragged him down the street; Rosales had to reverse the vehicle to get off Ramirez's body, and then drove away because he saw the flashing lights of police cars approaching. Rosales testified that he hit Ramirez accidentally, having lost track of where Ramirez was in relation to the car. Pineda drove away in Ramirez's truck, following Rosales in the Mazda.

---

[2] We take the facts from our prior opinion in defendant's direct appeal—*People v. Pineda, et al.* (May 4, 2006, H028625, H028891) [nonpub. opn.]—and from the appellate record in that case. On our own motion, we take judicial notice of that prior opinion. (Evid. Code, §§ 452, subd. (d), 459.) The appellate record from Rosales's direct appeal is part of the appellate record in this matter, having been submitted below as an exhibit to the prosecutor's opposition to Rosales's petition. Accordingly, Rosales's request for judicial notice is denied.

After a long car chase, during which Rosales evaded being stopped, officers pulled over Pineda in the truck. Pineda had blood on his shirt, pants, arms, hands, and head. Officers found a baseball bat in the truck.

Rosales and the Mazda were located the following day. Ramirez's blood was found on the fenders, wheel wells, splashguards, and the undercarriage of the Mazda as well as inside the vehicle, on the center console. Ramirez's watch and credit card were inside the Mazda.

Officers found Ramirez face down in the street, bleeding. He died from his wounds.

Joseph O'Hara, M.D., a forensic pathologist with the Santa Clara County Medical Coroner's Office, testified for the prosecution as an expert in forensic pathology. Dr. O'Hara, who did not perform Ramirez's autopsy but reviewed the notes and final pathology report of the doctor who did, testified regarding cause of death. He opined that Ramirez died as a result of multiple blunt force injuries, specifically crushing injuries of the chest. Dr. O'Hara testified that the "crush type injur[ies]" Ramirez suffered were consistent with having been run over by a car. While Dr. O'Hara was unable to "identify exactly where the tire struck [Ramirez's] body," he was "certain . . . that something of great weight rolled across [Ramirez's] chest." He opined that the crush injuries were caused by a "heavy object heavier than a human body" and not by a baseball bat. Dr. O'Hara testified that Ramirez also had sustained injuries consistent with having been dragged along the pavement or a road surface and burns consistent with having been exposed to the hot undercarriage of a car. Finally, Ramirez had 10 similar linear injuries (lacerations and contusions) on his head and body consistent with having been hit with an elongated object like a baseball bat. Dr. O'Hara testified that none of those injuries was fatal.

3

### B. *Procedural History*

The Santa Clara County District Attorney charged Pineda and Rosales with first degree murder (§ 187, count 1), second degree robbery (§§ 211-212.5, subd. (c), count 2), and carjacking (§ 215, count 3). As to each defendant, the information included a felony-murder special circumstance allegation. (§§ 211, 212.5, 190.2, subd. (a)(17)(A).)

In 2005, following a joint trial, the jury returned verdicts of guilty as to all counts and found the special circumstance allegations to be true. The trial court sentenced Rosales to life without the possibility of parole on the murder count and stayed the sentence on counts 2 and 3 pursuant to section 654. This court affirmed Pineda and Rosales's convictions in an opinion issued on May 4, 2006.

In February 2019, Rosales filed a section 1170.95 petition on his own behalf. The petition alleged that an information was filed against Rosales that allowed the prosecution to proceed under a theory of felony murder; that he was convicted of first degree murder pursuant to the felony-murder rule; and that he could not now be convicted of first degree murder because of the changes to Penal Code sections 188 and 189, effective January 1, 2019, because he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; he was not a major participant in the felony and he did not act with reckless indifference to human life during the commission of a felony; and the victim was not a peace officer in the performance of his duties.

The trial court appointed counsel to represent Rosales. Thereafter, the prosecutor filed an opposition to Rosales's petition. For reasons not apparent in the record, Rosales's appointed counsel moved to withdraw the petition and that motion was granted without prejudice in September 2019.

In December 2020, Rosales filed a second section 1170.95 petition making the same allegations as he did in his first petition. That petition also included extensive argument and a request for the appointment of counsel.

4

Without appointing counsel, obtaining further briefing, or holding a hearing, the trial court issued an order denying Rosales's petition. The court reasoned that the jury's felony-murder special circumstance finding precluded Rosales from making a prima facie showing of eligibility for relief under section 1170.95, stating: "To find the special circumstance true based on the instructions given required the jury to agree beyond a reasonable doubt to facts that would support a felony-murder conviction under the changes to Penal Code sections 188 and 189 in Senate Bill No. 1437: (1) he was the actual killer; and/or (2) he aided and abetted the murder while harboring the specific intent to kill; and/or (3) he was a major participant in the robbery and acted with reckless indifference to human life." Rosales timely appealed.

## II.   DISCUSSION

### A.   *Legal Principles*

#### 1.   *Senate Bill No. 1437 and Section 1170.95*

Senate Bill No. 1437, which became effective on January 1, 2019, was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-248.) As amended by Senate Bill No. 1437, section 189, subdivision (e), provides that a participant in a specified felony is liable for murder for a death during the commission of the offense only if he or she was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first

degree murder; or "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

Senate Bill No. 1437 also enacted section 1170.95, subdivision (a), "which establishes a procedure for vacating murder convictions for defendants who could no longer be convicted of murder under the new law and resentencing such defendants. (Stats. 2018, ch. 1015, § 4, pp. 6675-6677.)" (*People v. Allison* (2020) 55 Cal.App.5th 449, 455 (*Allison*).) A person is entitled to relief under section 1170.95 only if certain conditions are met, including that he or she "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)

"[U]pon the filing of a facially sufficient [section 1170.95] petition," the statute "requir[es] that counsel be appointed . . . ." (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).) "[T]hen the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Id.* at at p. 960.) Our Supreme Court has held that section 1170.95, subdivision (c) "describ[es] only a single prima facie showing" (*Lewis*, at p. 962) and that "a trial court can rely on the record of conviction in determining whether that single prima facie showing is made." (*Id.* at p. 970.) "[T]he prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the

petitioner." ' [Citations.]" (*Id*. at p. 971; see *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*), overruled on other grounds as stated in *Lewis* ["the trial court should assume all facts stated in the section 1170.95 petition are true" unless they are "untrue as a matter of law" or refuted by the record and may not engage in "factfinding involving the weighing of evidence or the exercise of discretion"].) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause." (*Drayton*, at p. 980.)

### 2.     *The Felony-Murder Special Circumstance*

Section 190.2 enumerates "special circumstances" that, if found true, make a defendant convicted of first degree murder punishable by death or life imprisonment without the possibility of parole.  One such special circumstance is the felony-murder special circumstance.  The requirements of the felony-murder special circumstance mirror the post-Senate Bill No. 1437 requirements of felony murder.  (*Allison*, *supra*, 55 Cal.App.5th at p. 457 (citing § 190.2, subds. (b)-(d); Prop. 196, as approved by voters, Gen. Elec. (Mar. 26, 1996) [amending § 190.2].)  That is, the felony-murder special circumstance applies where (1) the murder occurred during the commission of a specified felony and (2) the defendant was the actual killer; with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the murder; or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the felony.  (§ 190.2, subds. (a)(17), (c), (d).)

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)—decided after Rosales's conviction—the California Supreme Court clarified the meaning of the felony-murder special circumstances statute.  (*In re Scoggins* (2020) 9 Cal.5th 667, 671 (*Scoggins*).)  *Banks* addressed the major participant

aspect of the statute and *Clark* articulated case-specific factors that are relevant to whether a defendant exhibited reckless indifference to human life. (*Clark*, at pp. 611, 618-622.) A defendant with a pre-*Banks* and *Clark* felony-murder special-circumstance finding whose conviction became final prior to *Banks* and *Clark* may file a petition for habeas corpus seeking to have the finding invalidated. Such a defendant "is entitled to habeas corpus relief ' "if there is no material dispute as to the facts relating to his conviction" ' " and "the special circumstances statute as construed in *Banks* and *Clark*" did not prohibit his conduct. (*Scoggins*, at p. 676.)

### 3. The Impact of a Pre-Banks *and* Clark *Felony-Murder Special Circumstance Finding on Eligibility for Section 1170.95 Relief*

The Supreme Court has granted review on the issue of whether a felony-murder special circumstance finding under section 190.2, subdivision (a)(17) made before *Banks* and *Clark* precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95. (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606 (*Strong*).) The Courts of Appeal are split on the matter. "[S]ome courts [have held that] a section 1170.95 petitioner must always mount a successful collateral attack on a prior felony-murder special-circumstance finding against him—no matter when it was made—and until he does so, he cannot plead a prima facie case under section 1170.95, subdivision (c) as a matter of law. [Citations.]" (*People v. Secrease* (2021) 63 Cal.App.5th 231, 252 (*Secrease*) review granted June 30, 2021, S268862, fn. omitted, citing cases.) "Other courts do not impose a requirement that a section 1170.95 petitioner who seeks resentencing in the face of a prior jury finding under section 190.2, subdivision (a)(17) must first obtain habeas corpus relief, and hold that he may opt to pursue relief by attacking his murder conviction—not his special circumstance finding—on the ground that, under current law as revised by Senate Bill No. 1437, he could no longer be convicted of murder." (*Secrease*, at p. 253, citing cases.)

8

The court in *Secrease* adopted what it characterized as "a middle ground between these two lines of cases." (*Secrease*, *supra*, 63 Cal.App.5th at p. 247.) *Secrease* "agree[d] with the courts concluding that [petitioners with a pre-*Banks* and *Clark* felony-murder special circumstance finding are] not barred as a matter of law from pleading a prima facie case for relief under section 1170.95, subdivision (c)" *and* "with a critical premise of the courts reaching the opposite conclusion—specifically, that section 1170.95 does not allow relitigation of factual questions that were settled by a prior jury . . . ." (*Ibid.*) Accordingly, *Secrease* held that "where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute." (*Id.* at p. 255.) In *People v. Pineda* (2021) 66 Cal.App.5th 792, 801, review granted Sept. 29, 2021, S270513, this court followed *Secrease*.

### B.     Analysis

Rosales contends that the trial court erred in concluding that the jury's felony-murder special circumstance finding precluded him from making a prima facie showing of eligibility for relief. He further argues that the trial court erred by failing to appoint counsel and obtain briefing before denying his second petition, an error he says violated his constitutional right to due process. We begin with the first contention.

If credited, the factual allegations made by Rosales in his second (and operative) petition entitle him to section 1170.95 relief. The trial court was required to credit those allegations at the prima facie stage unless the record refuted them. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) As explained below, the trial court took the view that the jury's felony-murder special circumstance finding refuted at least one of the requisite allegations. That was error in light of *Pineda*.

9

Jurors were instructed that they could find the felony-murder special circumstance true only if they were satisfied beyond a reasonable doubt that Rosales "actually killed" the victim; aided or abetted the murder with intent to kill; or with reckless indifference to human life and as a major participant, aided, abetted, or assisted any actor in the commission of the crime of robbery which resulted in the death of a human being. As the trial court recognized, we cannot know which of those theories jurors accepted in finding the special circumstance true, nor which factual findings they made. Because the requirements of the felony-murder special circumstance mirror the post-Senate Bill No. 1437 requirements of felony murder, the trial court determined that the jury's conclusion that the felony-murder special circumstance was true rendered Rosales ineligible for relief, regardless of which factual finding underpinned that conclusion. Put differently, the trial court determined that the jury's felony-murder special circumstance finding refuted at least one of the requisite allegations—that Rosales was not the actual killer, did not aid or abet the murder with intent to kill, or was not a major participant with reckless indifference to human life.

However, in light of *Pineda*, the trial court was required to credit Rosales's allegation that he was not a major participant with reckless indifference to human life unless and until it made a determination that Rosales's conduct is proscribed by the special circumstances statute, as construed in *Banks* and *Clark*. (*Pineda*, *supra*, 66 Cal.App.5th at p. 801.) The trial court made no such determination here (unsurprisingly, as its order predated *Pineda*).

Nor is there any basis in the record to reject Rosales's allegation that he was not the actual killer. If the record conclusively showed that the jury found that Rosales was the actual killer, then the trial court would have been obligated to conclude that the record refuted Rosales's allegation to the contrary. But, as discussed above, it does not. (See *Secrease*, *supra*, 63 Cal.App.5th at p. 247 ["Because we must focus on what the jury actually found . . . , [petitioner's] ability to plead a prima facie case for resentencing relief

10

turns on what we can discern, objectively, from the verdict as read in light of the record of conviction"].) And, under *Lewis*, the trial court was precluded from engaging in its own factfinding. Certainly the trial evidence strongly suggested that Rosales was the actual killer. Dr. O'Hara testified unequivocally that Ramirez was killed by crush-type injuries that could not have been inflicted by a baseball bat, but rather must have been caused by something heavier than a person, such as a vehicle. No other expert testified as to cause of death. Rosales himself testified that he hit Ramirez with the Mazda.[3] But in order to conclude that the foregoing evidence refutes Rosales's allegation that he was not the actual killer, one must engage in factfinding involving the weighing of evidence. Specifically, one must credit Dr. O'Hara's trial testimony and infer that the vehicle driven by Rosales inflicted the fatal crush-type injuries on the victim. Such factfinding is not permitted at the prima facie stage of the section 1170.95 process. (*Secrease*, at p. 265; *Lewis*, *supra*, 11 Cal.5th at p. 971.) And, contrary to the Attorney General's argument, the existence of "substantial evidence that appellant was the actual killer" is insufficient given the applicable beyond a reasonable doubt standard.

---

[3] Defendant's contention that the trial evidence showed that Pineda may have inflicted the lethal blows is based on mischaracterizations of the trial testimony. Specifically, defendant asserts that Ramirez died because broken ribs—which could have been caused by the blows Pineda inflicted—punctured his major internal organs. That assertion finds no support in the evidence. Dr. O'Hara made clear that the fatal injuries were crush-type injuries that could not have been caused by something as light as a baseball bat. Defendant asserts that "[t]he medical examiner testified that there was no evidence on Ramirez's body to support the conclusion that a tire rolled over Ramirez's chest." Again, that is a mischaracterization. Dr. O'Hara testified that "there were no unique patterned injuries on [the victim's] chest that would enable me to identify exactly where the tire struck his body" and that there were no tire tracks or other "unique injuries visible on the body to point specifically to a car as being the mechanism of the trauma . . . ." But Dr. O'Hara further testified that he was "certain . . . that something of great weight rolled across [Ramirez's] chest" and that the injuries were caused by "some sort of heavy object heavier than a human body." Of course, if the matter proceeds to an evidentiary hearing, Rosales will have the opportunity to introduce new evidence, including as to causation. Conceivably, he could present expert testimony casting doubt on Dr. O'Hara's conclusions.

11

In view of the foregoing, "we are remanding the case for resumption of proceedings at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process . . . ." (*Secrease*, *supra*, 63 Cal.App.5th at p. 264; *Pineda*, *supra*, 66 Cal.App.5th at p. 802.) The trial court's task will be to conduct a *Banks* and *Clark* sufficiency-of-the-evidence review. That is, the court should determine whether there is sufficient evidence in the trial record to support findings that Rosales acted as " 'a major participant' " in an enumerated felony " 'with reckless indifference to human life' " as those phrases were construed in *Banks* and *Clark*. If there is, then "the section 190.2, subdivision (d) finding made against [Rosales] forecloses him from further litigating that issue, thus rendering him ineligible for resentencing relief as a matter of law." (*Secrease*, at p. 264.) This is the case because—if the special circumstance finding withstands a *Banks* and *Clark* sufficiency-of-the-evidence review—the trial court's reasoning becomes valid. That is, the jury's felony-murder special circumstance finding remains valid regardless of which theory it was based on and necessarily refutes one of the requisite allegations—that Rosales was not the actual killer, did not aid or abet the murder with intent to kill, or was not a major participant with reckless indifference to human life. However, if the evidence is insufficient, then the jury's felony-murder special circumstance finding does not foreclose Rosales from obtaining section 1170.95 relief. This is because—to the extent the jury's finding was premised on the theory that Rosales acted as a major participant in an enumerated felony with reckless indifference to human life—it is invalid in the wake of *Banks* and *Clark*. In that case, "an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3)." (*Secrease*, at p. 264.)

On remand, the trial court must appoint Rosales counsel, give the parties an opportunity to submit briefing on the issue as outlined above, and hold a hearing to determine whether Rosales has made a prima facie case for relief. (§ 1170.95, subd. (b)(3).)

12

**III. DISPOSITION**

The order denying Rosales's petition is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
ELIA, ACTING P.J.


WE CONCUR:




_____
BAMATTRE-MANOUKIAN, J.




_____
WILSON, J.




*People v. Rosales*
H048876